The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

BRANDON BUSSEY and HEIDI BUSSEY,
individually and as guardians of minor, H.B.,

Plaintiffs,

v.

THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, PAYDAN
BUSSEY, THAYNE LYMAN, PHILIP
BUSSEY, CATHY BUSSEY, and DOES 1-
100, INCLUSIVE,

Defendants.

NO.  2:25-cv-00197-TSZ

DECLARATION OF PHILIP BUSSEY IN
SUPPORT OF DEFENDANT THE
CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' MOTION TO
TRANSFER VENUE TO THE UNITED
STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH

PHILIP BUSSEY declares as follows:

1.      I am of legal age and mentally competent to testify to the matters stated herein if called to do so.  My wife Cathy and I are defendants in this action.  We are Plaintiff H.B.'s grandparents, Plaintiff Brandon Bussey's birth parents, and Defendant Paydan Bussey's adoptive parents.  I make this declaration based on my personal knowledge unless otherwise noted.

2.      Plaintiffs allege in their Second Amended Complaint that Defendant Paydan Bussey abused H.B. in the State of Washington in 2014-15 when he was an infant.  To my knowledge, there are no witnesses with personal knowledge of this.  The allegation is based on a purported conversation where my wife and I supposedly informed Brandon that Paydan had

DECLARATION OF PHILIP BUSSEY IN SUPPORT OF
DEFENDANTS THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' MOTION TO TRANSFER VENUE - 1
Case No. 2:25-cv-00197-TSZ

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

touched H.B. when he was an infant. I am not aware of any evidence to support the allegation, other than the statement attributed to me which plaintiffs allege to have occurred several years after the fact. My distinct recollection is to the contrary, as described below.

3.    My wife, Cathy, and I adopted Paydan from a Russian orphanage on October 17, 2000.

4.    Brandon and his family, including children A.B. and H. B. lived in Washington until 2016 when they moved to Utah.

5.    In 2012, Paydan was accused of committing sexual offenses at a swim meet in the Seattle area. In compliance with his court-mandated treatment, Cathy and I sent Paydan to Birdseye Residential Treatment Center ("Birdseye") in Spanish Fork, Utah. Paydan received treatment at Birdseye from March 2013 through November 2014.

6.    I understand that as part of Paydan's treatment at Birdseye, he admitted to *all* prior sexual offenses in which he was involved, whether or not charged by law enforcement. While Paydan was undergoing this treatment, I received a call from one of Paydan's therapists at Birdseye, Jessica Jenkins. Ms. Jenkins informed me that Paydan had admitted to inappropriately touching Brandon's daughter who is H.B.'s older sister, identified here as "A.B." when she was six months old.[1] Because A.B. was born on November 11, 2011, this abuse would have taken place in approximately May 2012, the same year as the swim meet incident and it would have occurred when A.B. and her family were living in Washington. Neither Cathy nor I had been made aware of any inappropriate touching between Paydan and A.B. before this telephone call in 2013 or 2014. Neither Cathy nor I were ever informed—at any time—of any inappropriate

---

[1] Because A.B. is a minor, her initials, rather than first name, are used pursuant to Fed. R. Civ. P. 5.2 (a)(3).

DECLARATION OF PHILIP BUSSEY IN SUPPORT OF
DEFENDANTS THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' MOTION TO TRANSFER VENUE - 2
Case No. 2:25-cv-00197-TSZ

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

touching between Paydan and H.B during the time Paydan and H.B. were living in Washington. Neither Ms. Jenkins nor anyone else at Birdseye ever suggested that Paydan had admitted to inappropriately touching H.B. at any time. Being personally unaware of any such touching of H.B. by Paydan in Washington, it is highly unlikely that I would have told Brandon about such a thing.

7.    Shortly after receiving this information from Ms. Jenkins, Cathy and I met with Brandon and told him that Paydan recently had admitted to inappropriately touching A.B. a year or two prior. Brandon asked that we not inform his wife Heidi. Although we disagreed with Brandon's desire to not inform Heidi, we respected his wishes.

8.    As part of Paydan's therapy at Birdseye, Paydan wrote a letter to Brandon and Heidi to apologize for his actions with respect to A.B. Personnel at Birdseye Treatment Center provided Cathy and me with a copy of the letter, the content of which is consistent with the information that Cathy and I provided to Brandon at that time. A true and correct copy of the letter is attached as **Exhibit A.** Cathy later added a handwritten note to the top of the document. That is the only modification of the original letter written by Paydan. Redactions have been made to omit A.B.'s full name. No other additions, redactions, revisions, or modifications have been made to the document. I have no knowledge whether Paydan ever gave this letter to Brandon and Heidi, or whether he otherwise shared with them his remorse over his inappropriate touching of A.B. The letter contains no indication about any inappropriate touching of H.B. in Washington State at any time, nor any indication of touching of H.B. in 2014-2015 as alleged in the Second Amended Complaint.

DECLARATION OF PHILIP BUSSEY IN SUPPORT OF
DEFENDANTS THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' MOTION TO TRANSFER VENUE - 3
Case No. 2:25-cv-00197-TSZ

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

9.      The letter written by Paydan readily acknowledges that he molested A.B. when she was six months old, which would have been approximately May of 2012.  At that time, Brandon and his family, including A.B., were living in Washington State.

10.      I have read the Second Amended Complaint filed in this case.  Paragraph 37 of the Second Amended Complaint alleges that in "late 2014 or early 2015," Cathy and I "informed H.B.'s father that [PAYDAN] BUSSEY had inappropriately touched H.B." at some earlier date.  This is apparently the only basis for an allegation that Paydan abused H.B. in Washington State.  But no such conversation ever occurred, and I have no information that would lead me to believe that Paydan inappropriately touched H.B. when H.B. was as an infant living in the State of Washington.  I can only surmise that Brandon mis-remembered our conversation regarding A.B., and that the allegation in Paragraph 37 of the Second Amended Complaint is a reference to the alleged abuse of A.B. that occurred in approximately May of 2012 before the family left Washington State in 2016.  It certainly is not an accurate recitation of Cathy's and my conversation with Brandon in 2013-14, or in "late 2014 or early 2015" as alleged in the Second Amended Complaint.  No such conversation occurred then or at any other time.

11.      My wife and I consent to the jurisdiction of the District Court of Utah, and to venue of this case in that jurisdiction, should the Court grant The Church's Motion to Transfer Venue.  We will make ourselves available for deposition testimony and we will attend the trial in Utah.

//

[SIGNATURE ON FOLLOWING PAGE]

//

//

DECLARATION OF PHILIP BUSSEY IN SUPPORT OF
DEFENDANTS THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' MOTION TO TRANSFER VENUE - 4
Case No. 2:25-cv-00197-TSZ

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

SIGNED ___9/9/2025 | 17:24:26 PDT___, at ___Fall City, Washington___.

Signed by:

*Philip Bussey*

7D4B6244339C4C0...

PHILIP BUSSEY

DECLARATION OF PHILIP BUSSEY IN SUPPORT OF
DEFENDANTS THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' MOTION TO TRANSFER VENUE - 5
Case No. 2:25-cv-00197-TSZ

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

# EXHIBIT A

Docusign Envelope ID: CCFB2330-54D6-45E3-ABC4C9FE452E0923

Paydan Shared Offending A███████
During Residential Treatment

**Brandon and Heidi,** *(Treatment March 2013 - Oct. 2014)*

I have been needing to get this out and if it will be helpful then you can read this, but you do not need it if you don't want to. I have recently been reflecting on my offence towards A████ when she was only 6 months old and there are several things I want to get out to hopefully give you hope and comfort you. First thing that I needed to say is that I have come to realize more fully on what I have done and the damages in our relationship and mom and dad and that I hope that my offending on her will not negatively affect her future. I recognize that being sexually victimized can potentially damage the way victims think about relationships in the future. I realize that my bad choices have potentially created a problem. I also understand that this may have been hard for you because now I know that if I was a parent I would strive to help and protect my daughter and I realize that I made this difficult for you. The next thought that came to mind was how did I come to think that offending on her was okay. Later, after thinking about this I concluded that I didn't think it was okay; however I did allow myself to work it up in my mind that I wasn't going to hurt her, you, and our relationship and that it wouldn't be a big deal. I now realize that my choice to offend was selfish and wrong I used the relationship I had with you in a way that hurt her. Harming her was not my intent but it was the outcome. I have learned how being victimized sexually can make personal relationships confusing, It can hurt trust in other caring relationships, sometimes kids who have been hurt sexually begin to focus a lot on sex or have confusing sexual feelings, they sometimes feel depressed or angry or isolated from others. Sometimes look back on the day that I chose to offend on A████ and think how your lives would be different and better and how A████ would have a better life if I would have chosen to not offend on her. When I was in treatment I tried to hide my offending on A████. Eventually I chose to be honest because I knew I needed to make a change and that it was best for me, you, and A████. Now I have learned copings that are useful and now I have learned new ways to cope that are healthier and that leads me into my next thought which is how I am going to create safety for you and your family and some of the ways are that I am going to maintain a healthy boundary. When around I will stay in sight of an adult, and I have learned that if I exercise in the morning I struggle less with my schooling, sociality, and sexual urges, I have also learned that I am now a good uncle and that is something that is much, much more special and meaningful than any offence. Thank you for giving me this opportunity to express this

Love, Paydan